NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210365-U

NO. 4-21-0365

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 19, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 20JA54 |
|     v. | ) | |
| Sarah R., | ) | Honorable |
|     Respondent-Appellant). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding (1) respondent mother an unfit person for failing to maintain a reasonable degree of interest, concern, or responsibility toward the minor's welfare and (2) that termination of her parental rights would be in the minor's best interests.

¶ 2    Respondent mother, Sarah R., appeals the order terminating her parental rights to her son, J.R. (born May 12, 2020). Respondent contends the trial court's decisions finding her unfit and terminating her parental rights were against the manifest weight of the evidence. We affirm.

¶ 3    I. BACKGROUND

¶ 4    At the time of J.R.'s birth in May 2020, respondent tested positive for methamphetamine. She admitted to a substantial history of substance abuse and to her continued daily use. The Department of Children and Family Services (DCFS) took protective custody of the

minor and placed him in a traditional foster home upon his release from the hospital following his birth.

¶ 5        On May 19, 2020, the State filed a petition to adjudicate J.R. a neglected and/or abused minor under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)), alleging his environment was injurious to his welfare when he resided with respondent due to her unresolved substance abuse. See 705 ILCS 405/2-3(1)(b) (West 2018). On January 5, 2021, respondent admitted the allegation, and the trial court entered an adjudicatory order accordingly.

¶ 6        On February 22, 2021, the trial court entered a dispositional order finding (1) respondent unfit and unwilling to care for, protect, train, educate, supervise, or discipline the minor; (2) placement of the minor with respondent was contrary to his health, safety, and best interest; and (3) the goal of substitute care pending termination of parental rights was appropriate. The court adjudicated the minor neglected, made him a ward of the court, and placed custody and guardianship with DCFS. On this day, the court also suspended respondent's visits with the minor due to her lack of progress, lack of communication, and sporadic attendance.

¶ 7        On February 26, 2021, the State filed a motion to terminate respondent's parental rights, alleging (1) she was an unfit parent in that she failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2020)) and (2) termination would be in the minor's best interest.

¶ 8        On June 21, 2021, the trial court conducted a termination hearing. The State first asked the court to take judicial notice of "this cause itself," specifically, the petition for adjudication, the adjudicatory order, and the dispositional order. Further, the State asked the court to take judicial notice that respondent failed to appear on October 8, November 30, and December

16, 2020. Finally, the State asked the court to take judicial notice that respondent's visits with the minor were never unsupervised, overnight, or extended and were suspended on February 22, 2021, the date of the dispositional hearing.

¶ 9        The State also requested the admission of an exhibit, marked as People's exhibit No. 3, which was a certified copy of a pending bill of indictment charging respondent with possession of methamphetamine. Without objection, the court allowed the admission.

¶ 10        Jessica Fuller, a child-welfare specialist at Chaddock Foster and Adoption, testified she was assigned as caseworker when her agency received this case from DCFS. She created respondent's initial service plan dated June 30, 2020. Because an integrated assessment had not been performed due to a COVID-related backlog, the sole task on respondent's initial plan was "cooperation."

¶ 11        Fuller testified that between May 1 and June 9, 2020, she made seven unsuccessful attempts to contact respondent at her residence and via telephone. In addition, during that timeframe, respondent failed to participate in three scheduled Zoom visits with the minor. However, on June 9, 2020, Fuller found respondent at her home. Fuller explained the foster-care process to respondent and gave her Zoom instructions. Fuller also said she gave respondent photos of J.R.

¶ 12        On cross-examination, Fuller testified respondent participated in the Zoom visits with the minor on June 10 and June 17, 2020.

¶ 13        Alexis Yuchs, also of Chaddock, became the caseworker in July 2020. She reviewed the integrated assessment and the service referrals which were already in place when she began. She authored and evaluated two service plans: the first dated November 23, 2020, and the

other dated May 21, 2021. Respondent was to participate in parenting classes, mental health treatment, and substance abuse treatment. She was also required to cooperate with the agency and secure suitable housing. Respondent's progress was rated overall unsatisfactory on both plans due to the agency's inability to contact her. Yuchs said respondent made no progress on her services. The goal listed on the May 2021 service plan was "substitute care pending termination" after Yuchs met with Emily Lindgren, "DCFS legal," and determined the case qualified for expedited termination due to respondent's lack of involvement.

¶ 14    Yuchs testified to the difficulty she had in contacting respondent beginning on July 13, 2020, and continuing through May 6, 2021. She detailed the specific dates and the means of communication for each attempt. She tried in-person contact at respondent's home, calling her on her cell phone, leaving voicemail messages, and mailing her alerts. Generally, Yuchs was only able to speak with respondent at the courthouse on the dates she appeared for hearings in this matter. According to Yuchs, respondent "didn't say a lot" about her failure to communicate.

¶ 15    At a court date in January 2021, Yuchs and respondent agreed on a meeting date and time to discuss referrals and the case in general. Respondent failed to appear at that meeting. Yuchs said, during their occasional conversations, respondent never asked about J.R. and gave no real response about not participating in services. During a conversation on March 26, 2021, after a court hearing, respondent informed Yuchs she had completed an initial assessment at Clarity Healthcare (Clarity), an agency that provided mental health and substance abuse services. However, respondent took no further action toward completion of those services or any other service set forth in her service plan.

¶ 16    After considering the evidence presented and the arguments of counsel, the trial

court found the State had proved by clear and convincing evidence that respondent was an unfit parent in that she failed to maintain a reasonable degree of interest, concern, or responsibility toward the minor's welfare. The court stated respondent "was essentially a nonparticipant in the case."

¶ 17 The trial court proceeded immediately to a best-interest hearing. Yuchs testified J.R., who was one year old, had been in the same traditional foster home since birth. Yuchs monitored the foster placement, visiting the home once or twice a month. J.R. had "a great bond" with both foster parents and "a great relationship" with their three biological children and another child in foster care. The home was meeting all of J.R.'s emotional, physical, and medical needs. The foster parents had expressed their willingness to provide J.R. with permanency by way of adoption.

¶ 18 No further evidence was presented. After considering the evidence and arguments of counsel, the trial court found the State had proved by a preponderance of the evidence it was in J.R.'s best interest that respondent's parental rights be terminated.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 A. Fitness Finding

¶ 22 Respondent argues the trial court's finding she was unfit was against the manifest weight of the evidence. Specifically, she claims the court's finding she had failed to maintain a reasonable degree of interest, concern, or responsibility as to J.R.'s welfare was against the manifest weight of the evidence. We disagree.

¶ 23 The State must prove a parent is unfit by clear and convincing evidence. A

reviewing court will give great deference to the trial court's findings because it has a superior opportunity to observe the witnesses' demeanor and credibility. We will not reverse a trial court's finding unless it is contrary to the manifest weight of the evidence, meaning the opposite conclusion is clearly evident from a review of the evidence. *In re T.A.*, 359 Ill. App. 3d 953, 960 (2005).

¶ 24    Section 1(D)(b) of the Adoption Act provides, in pertinent part, as follows:

"The grounds of unfitness are any *** of the following ***:

***

(b) Failure to maintain a reasonable degree of interest, concern[,] or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2020).

¶ 25    The language of section 1(D)(b) is in the disjunctive; therefore, any of the three elements may be considered individually as a ground for unfitness. This court has recognized that, when examining allegations under this section, the trial court must (1) focus on a parent's reasonable efforts, not the success of those efforts, and (2) consider any circumstances that may have hindered her ability to visit, communicate with, or otherwise show interest in her child. *T.A.*, 359 Ill. App. 3d at 961. "However, 'a parent is not fit merely because she has demonstrated some interest or affection towards her child.' [Citation.] Rather, a parent's interest, concern, or responsibility must be reasonable." *T.A.*, 359 Ill. App. 3d at 961 (quoting *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004)).

¶ 26    In her brief, respondent points to evidence she (1) attended Zoom visits with J.R. when her internet connection allowed, (2) consistently appeared at court hearings, (3) initiated a treatment program through Clarity, and (4) engaged in parenting classes. She also challenged

- 6 -

Yuchs's testimony about leaving respondent voicemail messages without inquiry as to whether respondent "had minutes left on her phone plan or if she was having other problems with her device." She also claimed it was evident she needed to work on herself before working on reuniting with J.R. and thus, "[h]er putting in the work on her own personal issues was directly for the benefit of J.R.'s interest and shows a reasonable degree of concern for him."

¶ 27 Respondent's claims are overshadowed by her lack of involvement in this matter. Respondent claims to have attended Zoom visits when her internet connection allowed. However, the record indicates the trial court suspended visits in February 2021 due to respondent's lack of progress and cooperation. The court found "any visits by the mother, since they have been so sporadic, would be doing more harm than good[.]" Respondent did not argue she was having any Zoom difficulties, so that claim is not well taken.

¶ 28 The record also suggested her attorney and both caseworkers had extreme difficulty contacting respondent for the duration of this case. Respondent places blame on the caseworkers for consistently trying to reach her by phone when it was conceivable that her phone plan did not allow for sufficient minutes or that she was having technical difficulties. But, according to the testimony presented, the caseworkers attempted to reach respondent in person at her residence and by mail on numerous occasions to no avail. Yuchs testified she was only able to communicate with respondent after several court appearances but respondent "didn't say a lot" about Yuchs's efforts or explain why communication with her was so difficult.

¶ 29 Respondent's claim that she initiated treatment at Clarity meant only that she completed the initial assessment, proceeding no further with the recommended services. Therefore, her claim that she was "working on herself" first for the benefit of J.R. is also not well taken. The

caseworkers testified respondent never asked about J.R. and never sent cards, letters, or gifts for him.

¶ 30　　　　The trial court heard evidence that respondent had essentially no contact with J.R., virtually or otherwise, and showed no interest, concern, or responsibility for him. She did not complete any recommended services and did not establish any pattern of communication with the agency. Reviewing the evidence in accordance with the applicable standard of review, we conclude the trial court's unfitness finding on this ground was not against the manifest weight of the evidence.

¶ 31　　　　　　　　　　　　　B. Best-Interest Finding

¶ 32　　　　Respondent also argues the trial court's best-interest finding was against the manifest weight of the evidence. We disagree. Following a finding of parental unfitness, the court's focus shifts away from the parents, and the court gives full and serious consideration to the child's best interest. *T.A.*, 359 Ill. App. 3d at 961. At the best-interest stage of termination proceedings, the State must prove by a preponderance of the evidence that termination is in the child's best interest. *In re D.T.*, 212 Ill. 2d 347, 366 (2004). A reviewing court will not disturb a court's finding that termination is in the child's best interest unless it was against the manifest weight of the evidence. *T.A.*, 359 Ill. App. 3d at 961.

¶ 33　　　　At the time of the best-interest hearing, J.R. had been living in the same foster home for approximately one year, since his birth. He was doing well and was well-loved by the parents and other children in the home. He had bonded with the family. His foster parents expressed their willingness to adopt him. Meanwhile, respondent was nowhere close to being able to assume parental responsibility for J.R. In light of this evidence, we conclude the trial court's decision that

it was in J.R.'s best interest to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 34                                    III. CONCLUSION

¶ 35        For the reasons stated, we affirm the trial court's judgment.

¶ 36        Affirmed.